Good morning, ladies and gentlemen. We're very pleased to be here at Lewis and Clark Law School in Portland, Oregon. Some of you may not know, but a lot about our court. We are one of the 13 U.S. courts of appeals. We differ from the other 12 in that we have specialized jurisdiction rather than national jurisdiction, and we are national rather than regional. And for that reason, once a year we decide to sit in some city other than Washington, and this year we have chosen to sit in Portland, Oregon. The diversity of our jurisdiction, even though we have specialized jurisdiction, the diversity is illustrated by the six cases we have on the calendar this morning. We have two patent cases from district courts. We have a government contract case, actually a bid protest test case from the Court of Federal Claims. And we have three cases that are pro se and being submitted only on the briefs and will not be argued. One is a veteran's appeal, another one is a government employee case, and the third is a patent office appeal from a patent office. Our first case is Seko Epson in Epson Research v. Courtronic Corporation in Optimal Technology, 2011-11-20. And Mr. Walker. Good morning, Your Honors, and may it please the Court. The conflicting expert testimony in this case raises numerous genuine issues of material fact, including whether or not it would have been easy, routine, predictable, and common sense for a person of ordinary skill in the art to combine Nakamura and Gourdine to achieve an operable projector to which the claims are directed. Moreover, the technology— Mr. Walker, this case was at the Court before and was sent back because on the obviousness issue, there seemed to be a missing part of what was claimed. And that emerged on remand when another reference was produced that showed a second air path. And so why isn't the claimed invention now, when you combine Nakamura, which has a projector, which is what's claimed, with Gourdine, which has that second conduit, why doesn't that render the invention obvious? Well, for a number of reasons, Your Honor. First of all, Seko's expert, Mr. Keller, in a detailed declaration, first questioned the combinability of Nakamura and Gourdine. Gourdine, much like the secondary reference that was at issue in this Court's source search case, provides a generalized teaching of isolating one component. And its only specific example is a computer microprocessor chip for maximizing the cooling of all of the components in the cabinet. It's not directed to power supplies. It's not directed to projectors. And here, in the context of summary judgment— So here you have two electronic instruments with mechanical aspects to them. And you've got a second air path, which is what was missing from Nakamura alone. This, once gilded in the art, can combine aspects of different devices to put together, essentially, what's claimed. But here, the question is whether that would have occurred to the person of ordinary skill in the art. Because there's a big difference. Even though computers and projectors are fair game for consideration, there's a big difference between computers and projectors. Projectors have a number of heat-generating sources that need to be cooled. And in fact, the power supply is not the hottest nor the most temperature-sensitive compound. Did you have testimony from your expert that someone would not have looked to this analogous art? Not that they wouldn't have necessarily considered it, but that it would not have suggested to the person skilled in the art to use Gordine's conduit to cool Nakamura's power supply. Because of the noise problem? Because of a host of problems. Apart from the noise problem, what else? He said, first of all, you do have to consider the fact, you've got to consider Gordine in total, and you do have to consider the fact that what they were trying to do is isolate the hottest component to maximize the cooling of all compounds. Put that one aside. Apart from that, what's the problem with the combination? The problem is, first, that it wouldn't have occurred to them. But secondly, then, even if you assume arguendo that it would have occurred, would it have been straightforward to isolate air for the power supply and now run into problems, as he's pointed out in his declaration, with potentially not having enough air for the lamp, not having enough air for other hot components, while you're also having to maintain that optical path inside the unit? And then other issues that you've mentioned, noise, et cetera. Well, the additional air would be supplied by either having a second fan or by running the first fan at a higher speed. And he's saying that that might have occurred to somebody, but it would have been a noise problem. Am I correct about that? Well, a noise problem, a space problem, a weight problem, and other things. But why is that important? Because the way I read your claim, it's very general. You're not claiming an optimized projector cooling system. You're not claiming a projector system, cooling system, that has an efficacy at a certain level. You're simply claiming the structure that the district court concluded was found in a combination, Given the simplicity of the clause of the limitation of your claims that pertains to cooling, why isn't it sufficient that Gourdin could be made to work, even though it might not work well? Well, first of all, not working well is one consideration. Why is it a consideration? Because you haven't claimed efficacy here. You've claimed structure. And the structure is found in a combination of Nakamura and Gourdin. So that if Gourdin doesn't produce the best projector, a projector cooling system, it would nonetheless produce, when combined with Nakamura, a projector cooling system that would have some effect of cooling a hot component, right? Well, I would disagree. You don't think it would cool a hot component at all? Well, not so that you could reasonably anticipate that you're going to have an operable projector with the lamp holding up and not degrading too much and other components being cooled. Well, let me put it to you this way. Suppose that someone had a poor projector. It really was not very good because it didn't cool very efficiently. But it used the structure that you've recited here, i.e., a conduit that goes from the intake around a hot portion of the projector and it exits to the outside. That would infringe, would it not? We'd have to obviously consider that.  What you're saying is that there's no requirement of an effective system, right, for infringement. It could be a lousy projector, but you could still see the infringement. You can certainly have inefficient infringement. Sure. So why doesn't that lead to the inverse, which is to have obviousness? Because of the territory that we're in with obviousness. Obviousness, you do have to have motivation. You do have to have rationale for combining them. But you don't look beyond the claim limitation. Weyers says specifically that it's not a claim limitation, the fact that it doesn't accomplish a particular thing is wrong, right? But the claim here is directed to a projector, not simply to a cooling device. Well, it doesn't say whether it's a good projector or a bad projector, right? Not in so many words, but part of the obviousness analysis is that it has to operate for its intended purpose. In fact, in this court's Heineck's decision in May of this year, subsequent to our briefing, the court there talked about how well a combination is expected to work is certainly a legitimate consideration and an obviousness inquiry. And obviousness is a different territory from infringement. I did want to make the other point while we have a small pause, that we've also mentioned that Mr. Keller, in his declaration, contends that Nakamura does not include all of the elements of the claim that the district court- Gordine does. Gordine does. Nakamura doesn't and Gordine. Gordine does. But if you get the combination, it discloses all of them, right? Well, no, because Gordine does not disclose, for example, a power supply. And we continue to contend- But there's a power supply in Nakamura. Not a power supply as claimed with an inside ventilating path and inlet and outlet. Nakamura is not specific about that power supply. It gives only a schematic illustration. It doesn't give the details. So you're contending that unless you've got two identical devices, you can't combine the features of them for an obviousness purpose. We're simply pointing out, Your Honor, that the combination doesn't include all of the elements. And one of the issues on obviousness is, are they combinable? And if combined, do they have all of the elements? We wanted to point out as well that part of the analysis here is whether you have something simple and straightforward or such that you can say- because remembering Portronic here, we're on summary judgment. If a reasonable jury could, and we submit they should, hold for SACO, summary judgment's not appropriate. This court, in several of its decisions, Trimed, in Source Search, in Commonwealth, where there were genuine issues of material fact because of conflicting expert testimony, this court held properly that summary judgment's not appropriate. And we're here on summary judgment, where Portronic has the clear and convincing burden of proof. We believe, we've raised in a very detailed declaration, that there are genuine issues of material fact here, with respect to all aspects of both what's disclosed in Nakamura, what's disclosed in Gourdine, whether they're combinable. As it was stated in the Source Search case, would the person of ordinary skill in the art here, and remembering this is not Dr. Bieber, the MIT PhD, or Mr. Keller with a career in projector design, the ordinary person, would they have recognized a need for using Gourdine's conduit to cool a projector power supply, given Gourdine's complete absence of any guidance for using it for a power supply? And even if that person of skill in the art did recognize a need, would they have considered the solution to be straightforward? If you wanted to save five minutes, you're into your rebuttal time. You can either continue or save it. I'll reserve for rebuttal unless there are any other questions. Let me just ask a very quick question, just to make sure I understand. I was a little confused by your earlier response. Are you conceding that Gourdine is an avid assortment? Let me put it this way. We have not challenged it as being non-analogous, and we feel that if it is instead of being analogous. Good morning. If it pleases the court, I'm Steve Heminger from Alston & Byrd on behalf of Quartronics and Optoma. The reason they're not contesting that computers and related technology like Gourdine are not analogous is because their expert expressly testified that is the case. Dealing first with the issue that he raised about that Nakamura doesn't include all of the elements. Let me ask you first. Finding patent invalid or obvious in summary judgment is a bit unusual, isn't it? Aren't the usual underlying issues of material fact? Usual or not, I certainly know many of the members of this panel have written numerous opinions finding and holding patents invalid for obviousness. In fact, the two of you, Judge Lurie and Judge Bryson, sat on the panel and found four of the five patents invalid for obviousness and anticipation. I think it is unusual that there are no underlying fact issues in a patent case. This is one of the cases where there are no underlying issues of fact. Isn't the issue, possible underlying issue, whether one in the projector would look to computers for cooling over? That could, except for the fact that both Dr. Beaver, Quartronics expert, and Mr. Keller have expressly stated you would look to computers because they're analogous. They have an enclosure with components that need to be cooled. In fact, the issue about the lack of the power supply, if you look at the court's underlying claim construction, which is at, I believe, JA 0132 through 135, there was a construction about the ventilating path through the power supply. Judge Patel rejected Quartronics' argument that the power supply have an enclosure and adopted Sekou Epson's broader interpretation that it could be open. And when you have an open power supply, you have an inlet when it crosses the boundary. Mr. Keller's determination that the power supply is missing from Nakamura is based upon his understanding and reinterpretation of the power supply element of having to have an enclosure, and he refers to the definition of inlet. So that is not an underlying issue of fact. That is really an opinion of an expert about what the claim term should be, which is not at issue here. Furthermore, with regard to the cases, the Cicero case, the TriMet case, the source search case, all of those were either overturned or affirmed for non-obviousness because of an underlying issue of fact. In source search, there was no qualifying quote. In Cicero, if I recall, there was about the OFDM, and there was a question about whether the art was analogous. In hearing components, which he didn't bring up, but it was another one that was held, the obviousness analysis was not held up. There they were, again, missing an element for the earpiece. So all of those cases are distinguishable. And if we look to KSR and if we look to wires versus master lock, the law is that, in fact, the ultimate decision of combinability... KSR was. And the issue there was, what if we have a dispute of the experts? And both the courts, both this court and the Supreme Court, has held you can have conflicting expert reports or conferring expert opinions, and that will not preclude a finding of summary judgment of obviousness. And the reason for that is because the ultimate question of combinability, which is essential to predictability, is the legal determination by the court. We've said that, of course, time and time again, and I'm not sure I've ever really understood what it means to say that it's a legal determination based on underlying findings of fact, particularly if you weight the findings of fact heavily and include, for example, the factual question of whether a person of skill in the art would find a reason to combine X with Y, even if X and Y are in an analogy. Sorry, if you have an expert who stands up and says, I can tell you, based on my experience in the field, that a person of ordinary skill would not combine this feature from this art with that feature from that art, why isn't that an inherently factual-type question, not a legal question? And why, then, isn't that enough to create a factual question in a summary judgment context? That, of course, is an issue that plagues all patent lawyers and the courts. It plagues all patent judges as well. It's fact-specific, and you have to look at the reasons for the non-combinability. Quite frankly, in this particular case, when you look at the declaration of Mr. Keller, in only one place in his declaration does he talk about predictability, and that's in paragraph 63, subpart 4. And he doesn't say the combination of Nakamura and Gordine would give you an unpredictable result. What he says is very specific. He says, if I'm going to enlarge the conduit in Gordine, it's unpredictable whether I can remove the plenum or the fan housing. He never once in his declaration ever says that the combination is unpredictable. That is a lawyer's argument that has come up after the fact in order to avoid the underlying ruling. And, of course, Dr. Bieber never used the word predictable or unpredictable. In fact, I don't think anybody disputes that airflow is mysterious, and in response to a precise question from SEC's counsel, she testified, I don't know for sure whether this cooling air coming from the duct 42 would impact the cooling of the lamp. And she said the airflow is mysterious. And he pressed, the lawyer pressed, and said, why? And Dr. Bieber said, well, you know, if I really wanted to know the answer, I would model it. In other words, I would use normal engineering tools to figure out how it would work. So all of these issues, none of which are in the claims, dealing with whether or not ‑‑ Well, that's the legal issue, right, because the Keller declaration is saying there would be problems here, which are, as we discussed earlier, not reflected in the claim law. That's the central issue. Everything that he says is a problem is something that's not reflected in the claim law. I agree completely, Your Honor. And on top of that, a close reading of the evidence reveals he really doesn't identify problems. The one he said relates to the cooling. And if you look at Nakamura ‑‑ He does identify a problem. He said there would be a noise problem. He says that. He says there could ‑‑ If you put in more air to solve the need for a larger volume of air for cooling, you'd get a noise problem because you'd have to run the single fan at a higher speed or have a second fan. And either of those would create a noise problem. That's basically what he's saying. He postulates that. He never comes out and says you absolutely need to have another fan. And quite frankly, when you look at Nakamura ‑‑ No, but he says to get the volume of air, you either have to increase the fan speed or have a second fan. He does say that, Your Honor. And he says that that would lead to a noise problem. He says that would be inconsistent with the teachings of Nakamura, not that it would necessarily be a problem in the art. He's saying that was part of his inconsistency between Nakamura and Gordine. Well, what if it is a problem to someone who's trying to optimize their cooling system, that it makes a little more noise? Because that isn't enough to render it nonobvious, I think, would it be? Of course not. I mean, as ‑‑ Well, I don't know if it's in accordance. Of course not, because I think your opponent would say, but au contraire. Well, I think my opponent, respectfully, is incorrect. But in this case, as was pointed out, none of the claims talk about how to accomplish that. In fact, none of the three patents that issue, the 158 patent, the Nakamura patent or the Gordine patent, ever have a single dimension in it. And quite frankly, the fact that you can make a projector that has the separate duct, I think is belied by the fact that SEC says their projectors, which are commercially available and bought by people, in fact, practice the claimed invention. So it is possible, certainly, to combine these, the Gordine with the separate path and the projector of Nakamura to come up with the claimed invention. But to the Nakamura point and the inconsistency, one thing that really hasn't come up, but in response to their reply, Nakamura actually says you can have multiple airflow paths and still accomplish the basis for reducing the number of intakes and the noise from the fans. And where do we find that? We look at Figure 1. Figure 1 in Nakamura is one embodiment, the first one they talk about, and it does not have the fresh air intake 42. In fact, all it has is a single input that goes through the LCD display chamber, goes through the fan 35, through the power supply, and exhausts out past the lamp. There is no intake 42. Figure 2 adds and expresses that if you want more cooling, you can add 42 to come in and have direct cooling air right into the power supply. So this whole argument about one skilled in the art not knowing whether or not it would work for its intended purpose, if you just look at the teaching of Nakamura, we see that since in Figure 1 I don't have any fresh air coming in at all, if I wanted to in Figure 2 take all the air from the intake 42 and pass it on through the power supply and direct it out, I would really be no different than the working embodiment that Nakamura talks about and achieves their invention. It doesn't have, Nakamura doesn't have dedicated air for the power supply. It doesn't. That comes from Gordine. And the suggestion is if you apply Gordine, which teaches the general application of the separate airflow to cool any kind of components in a case, then you would end up following, if you will, the teachings of Nakamura, taking the three steps to add extra cooling to the power supply. So this inconsistency is not really a fact issue. One other important point we'd like to make is if you again search the record, nowhere does Mr. Keller say that the combination would not work for its intended purpose. Nowhere. I've scoured it a dozen times to make sure before I made that comment. Nowhere does he say it won't work for its intended purpose. He points out little pieces as to why he thinks there would be issues, but he never addresses the explanation that it wouldn't work, which we think is an important point. Now that gets, again, to the question wouldn't work versus wouldn't work well. It wouldn't work as well as the claimed device is required to work. It is, but again, the working of the... There's plenty in his report that suggests that it would have problems, i.e. would not work as well as would be optimal. Well, I think that's too gratuitous of a reading of his declaration. I think his declaration merely states here are the issues and the inconsistencies. I don't think he ever comes up and says it wouldn't work as a projector. Well, no, not as a projector, but issues such as noise. You don't want to have noise with a projector. It drowns out the audio, which is particularly loud, right? So it works, but it doesn't work all that well. That's the hypothesis. I don't think SEC would agree that their projectors are too noisy and don't work well, which practice the claimed invention. Their expert is saying that the combination of these two references would produce a noisy projector. I think that is a fair reading. It would be noisier... The question is what's the pertinence of a non-optimal projector, even if they're right. It brings us back to that question. Also, I think he says it would be noisier than Nakamura. I don't think he talked in general and compared it to projectors that are out in the public. He seems to be saying it wouldn't serve the purpose of Nakamura to minimize noise, rather than the purpose of this patent. Correct. As this court has held, the fact that you may deviate from the... Well, I don't think it's applicable here, but the fact that you may deviate from the expressed teachings of a reference doesn't preclude the fact of the combinability of the references. So, in sum, there is no underlying factual issues. Also, the ultimate question, which they're challenging, of predictability slash combinability, despite the problems we have in drawing that fine line, in this case, the fine line tips in favor of it being a legal question which is properly decided by the district court that a reasonable jury would not find a dispute in the facts and would, in fact, find that the patent is invalid. We ask that you affirm the district court's opinion. Thank you. Thank you, Mr. Heminger. Mr. Wofford has a little bit of time. Thank you, Your Honor. I would just like to first address these cases that Cortranek relies upon that were decided by this court where a summary judgment was found. Mr. Heminger says that summary judgment was found appropriate even where there were conflicting issues of fact. And the cases they rely upon, Ball, Aerosol, Tokai, Perfect... I don't think that's what he said. I think what he said is that there are summary judgments even though there were competing expert affidavits. Obviously, if there are material issues of fact in the dispute, there can't be summary judgment. But the mere fact that you have two affidavits, one saying it's obvious, the other saying it's not obvious, is not sufficient. That was ASR itself, right? So what you've got to do is to identify a dispute about a fact that requires trial. But what is fact here that's in dispute that requires trial? And we believe Mr. Keller's declaration has raised that. What is that? What is the fact issue? One issue is the predictability. He doesn't have to use that word to get at that in his declaration. He's given all kinds of reasons why he doesn't think that a person skilled in the art would have used Gordine's conduit for the purpose of cooling the power supply. But that's sort of an ultimate conclusion. No. Which is what ASR said wasn't sufficient. I mean, the question seemed to be, you know, is there some fact dispute as to what would happen with the combination or there would be a problem with the combination. He says there's a noise problem. He says that there will be reduced. There doesn't seem to be a dispute. There's no contrary affidavit saying there wouldn't be a noise problem. So he's saying that it might increase the ambient noise. The question is, is that sufficient? So I'm presuming we're almost dealing with undisputed facts. Well, we believe they're disputed because, I mean, Dr. Bieber believes that, you know, it would have been obvious to somebody skilled in the art to combine these references to write a declared invention. That's not a fact issue. It's a conclusion by an expert that would have been obvious. It's not a fact issue. It's a legal issue. Combinability is an issue of fact. Rationale is an issue of fact. And predictability is an issue of fact, according to Dupuis, Spine, and Treiman. In fact, in Dupuis, Spine, predictability was defined as whether the combination would have worked for its intended purpose, which is part of, you know, what Mr. Keller's getting at here, that it wouldn't have worked for its intended purpose as a projector because of reduced lamp cooling. He also pointed out that he didn't think Bourdin's conduit would adequately cool the power supply, that you'd have to then be confronted with all sorts of hurdles to make it work, and when you're confronted with those, you run into all of the other problems that projectors can't have, noise, weight, you know, large size, things that you would have to do to make this combination work, if it would have even occurred to the person skilled in the art in the first place. I wanted to mention, too, that with respect to KSR, there the Supreme Court said that the patentee's declarations were conclusory. That's why the Supreme Court in KSR decided that summary judgment was not precluded. Mr. Keller's declaration is certainly not conclusive. He doesn't necessarily, if he had used legal terminology, then what we would be hearing is that, you know, it's a fact witness or an expert witness using legal terminology. But he provided a lot of facts on summary judgment, opposing summary judgment. And interestingly, their expert, Dr. Bieber, never came back and said with their burden of proof that the invention would work for its intended purpose. She simply focused on that it would cool the power supply and made no comment on what other effects there would be on the projector. Your Honors, I see that I'm running out of time, and I thank you very much for your time today. You have run out of time. You've both been good projectors. No noise, and we'll take the case on review. Thank you, Your Honors.